UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TRUST SAFE PAY, LLC,
    Plaintiff,

v.                                                                                           CIVIL ACTION NO. 17-10166-MPK[1]

DYNAMIC DIET, LLC, KOSTAS
VADOKLIS, and VILMA VADOKLIS,
    Defendants.[2]

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS (#52).

KELLEY, U.S.M.J.

I. Introduction.

On April 7, 2017, plaintiff Trust Safe Pay, LLC (Trust Safe)[3] filed the operative first amended complaint (#48) against defendants Dynamic Diet, LLC (Dynamic)[4] and Vilma and

---

[1] On March 21, 2017, with the parties' consent, this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). (#42.)

[2] The amended complaint also lists "Does 1-10" as defendants. *See* #48 at 1. These defendants have been voluntarily dismissed. (#63.)

[3] Trust Safe is the only plaintiff in this action, *see* #48 ¶¶ 1-2, even though the amended complaint refers to the plaintiff in both the singular and plural forms. *See, e.g.*, *id.* ¶ 20 ("In performing the work . . . for Plaintiffs, Vilma had access to . . . the number of customers Plaintiff had and was acquiring daily, the location of Plaintiff's biggest customer base, and the profit margin realized by Plaintiff.").

[4] Dynamic is referred to as a limited liability company (LLC) in the amended complaint, but is defined as a corporation. *See* #48 ¶¶ 3 ("[Dynamic] is a corporation organized and existing under the laws of the Commonwealth of Massachusetts . . . ."), 32 ("In January 2015, Defendants incorporated [Dynamic]").

Kostas Vadoklis (the individual defendants) alleging copyright infringement, Count I, contributory infringement, Count II, and vicarious infringement, Count III, all in violation of the Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq.*; misappropriation of trade secrets, Count IV, in violation of Mass. Gen. Laws ch. 93, §§ 42 and 42A; intentional fraud, Count V; common law misappropriation of trade secrets, Count VI; and violation of Mass. Gen. Laws ch. 93A, § 11, Count VII. (#48.) This action stems from a friendship gone awry between plaintiff's principal, Evelina Juchneviciute, her partner and co-member of Trust Safe, Darius Kersulis, and the individual defendants. The problems allegedly resulted in the individual defendants surreptitiously stealing proprietary information relating to Trust Safe, which information was then used to open and operate a competing company, Dynamic. *Id.*

Presently before the court is defendants' motion to dismiss the amended complaint for failure to state a claim (##52, 53). Plaintiff has responded in opposition (#59), and defendants have replied (#62).

## II. The Facts.

The facts as set forth in the amended complaint are as follows. In 2007, plaintiff's principal, Evelina, hired defendant Vilma to assist with a house cleaning business which Evelina owned. (#48 ¶ 7.) For the next seven years, Evelina, Darius, and the individual defendants interacted socially and became friends. *Id.* ¶ 8.

In 2009, Evelina and Darius began a business "representing weight loss products." *Id.* ¶ 9. In doing so, they created an "algorithm" to facilitate the online marketing of their business. *Id.* ¶ 12. According to plaintiff, "the algorithm had a significant value" because it "generated substantially improved visitor intention accuracy, visitor time retention on the websites, increased percentage of sales for any given visitor amount (new end users to plaintiff's websites)

2

and new sales generated." *Id.* ¶ 14.  To protect the algorithm, Evelina and Darius locked the basement of their home – the room out of which the business was operating – and password-protected the computer that held "the passwords to all the third party advertising accounts[] and the secret words and word combinations that formed the algorithm." *Id.* ¶ 16.

In April of 2012, Evelina and Darius needed someone to run the packaging and shipping portion of the business while they took a vacation. *Id.* ¶ 17. Vilma offered her assistance and was paid for the work she performed. *Id.* ¶¶ 18, 19.  Vilma was afforded access to confidential information that included: "revenues generated, the costs of the business, the number of customers Plaintiff had and was acquiring daily, the location of Plaintiff's biggest customer base, and the profit margin realized by Plaintiff." *Id.* ¶ 20.

It is plaintiff's position that, after learning the inner workings of the business, the individual defendants decided to "misappropriate the algorithm and all other proprietary information [that] made Plaintiff a successful business" and "to start their own diet/supplement internet business." *Id.* ¶ 21. Thereafter, Vilma offered repeatedly to babysit Evelina and Darius's children and was allowed to do so. *Id.* ¶¶ 23, 24. According to plaintiff, Vilma, who knew the location of the key to the locked basement from her prior work for the business, used her time babysitting to attempt to learn the password to plaintiff's computers[5] "by trying combinations of numbers and/or letters and symbols until she succeeded . . . ." *Id.* ¶ 26; *see also id.* ¶ 25. Once she gained access to plaintiff's computers, Vilma began to purloin a substantial amount of information and eventually used it "to create a copycat business of Plaintiff's websites and business system using the Plaintiff's algorithm." *Id.* ¶ 27.

---

[5] The amended complaint references both a single computer and multiple computers. *See, e.g.,* #48 ¶¶ 16, 26. The number of computers has no bearing on the court's analysis.

From April 2012 through January 2013, Kostas spoke with Darius regularly regarding Kostas's intention to start an online electronic cigarette business, asking Darius how to run such a business and increase sales. *Id.* ¶ 28. During this same period, Vilma spoke regularly with Evelina about Trust Safe and what "solutions [Evelina] [was] implementing to advance her business." *Id.*

In April and July of 2014, the individual defendants purchased domain names for their "copycat" websites. *Id.* ¶ 30. In January 2015, the individual defendants incorporated Dynamic. *Id.* ¶ 32. At this point plaintiff became aware of "a new competitor that was bidding on the same keywords Plaintiff used in its algorithms."[6] *Id.* Through research, plaintiff came to learn that the individual defendants were the owners of these competing websites. *Id.* ¶¶ 33, 34. "Since January 2015, Plaintiff has monitored Defendants[7] and the company to whom they outsourced their website build[] for visits to Plaintiff's websites[] as well as the changes Defendants were making to their websites based on Plaintiff's . . . changes on their [sic] websites." *Id.* ¶ 35. Based on this information, plaintiff asserts that, from January 2015 through the date the amended complaint was filed, "Defendants and/or the website build company has visited Plaintiff's website several times per week, sometimes multiple times per day, accounting for hundreds of separate visits and tens of thousands of page views[,]" and that "Defendants' websites would be changed in the exact ways Plaintiff would change its website." *Id.* ¶ 36.

---

[6] Some confusion arises as to whether the use of the plural form of "algorithm" in the amended complaint refers to the existence of other algorithms or is merely a typographical error. *See* #48 ¶ 32. Regardless, the amended complaint only advances allegations based on defendants' misappropriation of a single algorithm.

[7] The amended complaint refers to both "defendant" and "defendants." Thus it is unclear whether plaintiff monitored the individual defendants, Dynamic, or both.

Plaintiff contends that since the launch of defendants' competing websites, in January 2015, Trust Safe's revenue generated from California, which is the location from which it obtains the largest portion of its customer base and sales, has shown the "largest decline." *Id.* ¶¶ 37, 38.

III. Standard of Review.

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must "'accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor.'" *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley*, 657 F.3d at 46 (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." *Id.* at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, the

court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

IV. Discussion.[8]

A. Copyright Infringement – Count I.

"To establish copyright infringement under the Copyright Act, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Plaintiff bears the burden of proof on both elements. *Id.*

---

[8] Trust Safe levies allegations against all three defendants. *See* #48 at 7-15. However, plaintiff fails to delineate who specifically is accused of each illicit action or in what capacity they were acting. *See id.* at 7-15 (levying allegations against "Defendants"). While the court is able to discern, in certain instances, where the individual defendants are the accused by relying on context – *e.g.*, the theft of the algorithm occurred before Dynamic existed – the majority of Trust Safe's allegations do not differentiate between the actions of Dynamic, Vilma, or Kostas. This general levying of allegations does not afford each defendant the opportunity to know exactly what it is that she/he/it is accused of. Equally troubling is Dynamic's potential status as a LLC.

> Under Massachusetts law,
>
> the debts, obligations and liabilities of [a[] LLC], whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the [LLC]; and no member or manager of [a[] LLC] shall be personally liable, directly or indirectly, . . . for any such debt, obligation or liability of the [LLC] solely by reason of being a member or acting as a member of the [LLC].

*CMI Assocs., LLC v. Reg'l Fin. Co., LLC*, 775 F. Supp. 2d 281, 288 (D. Mass. 2011) (quoting Mass. Gen. Laws ch. 156C, § 22) (some alteration in original). Some of the claims asserted against the individual defendants may be statutorily barred if they were acting in their official capacity as members of Dynamic. Dynamic's status as a LLC is unclear, and therefore the court need not address the potential of piercing the corporate veil at this time. Should Trust Safe choose to file a repleader, the issues concerning Dynamic's LLC status and the lack of specificity in the amended complaint's allegations must be addressed. Trust Safe's bald assertion that "Defendants . . . conspired and . . . act[ed] pursuant to said conspiracy" (#48 ¶ 6), does not ameliorate these problems.

1. <u>Ownership of a Valid Copyright</u>.

Subsection (A) of 17 U.S.C. § 411 states that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." Thus, plaintiff's claim, if viable, must satisfy the "preregistration" component of the statute. Nowhere in the amended complaint does Trust Safe claim to be the owner of a validly registered copyright. The amended complaint asserts that "Plaintiff is the assignee of three (3) applications for copyright registrations in works of visual art, which include[] various web-pages of Plaintiff's websites, application numbers 1-3998164856; 1-3998164250; 1-4018230311 . . . ." (#48 ¶ 41.) Trust Safe takes the position that this allegation is sufficient to pass muster under § 411. *See* #59 at 10.[9] While the court need not decide the issue at this juncture – plaintiff's claim fails on other grounds, *see infra* Section 2 – it notes that a plaintiff relying on the "application approach"[10] must demonstrate that it "sent the requisite application (together with deposit and fee) to the Copyright Office." *Alicea v. Machete Music*, 744 F.3d 773, 779 (1st Cir. 2014) (internal citation omitted); *see also Concordia Partners, LLC v. Pick*, No. 2:13-CV-415-GZS, 2013 WL 6817627, at *2 (D. Me. Dec. 23, 2013) ("As Defendants acknowledge, Plaintiff has alleged that they have applied for copyright registration and satisfied all of the necessary formalities to obtain the registration certificates."). Contrary to Trust Safe's assertion that such information is "readily verifi[able] . . . through the Copyright Office website[,]" (#59 at 10), should plaintiff choose to replead its copyright

---

[9] The court will cite to the parties' submissions as paginated on the docket.

[10] The application approach to § 411 deems the registration requirement satisfied "at the time the copyright holder's application is received by the Copyright Office." *Alicea v. Machete Music*, 744 F.3d 773, 779 (1st Cir. 2014).

7

infringement claim, such a showing must be made in the repleader or via documents attached to it.

## 2. Copying of Constituent Elements.

The mere allegation that a defendant copied the work of a plaintiff is insufficient, on its own, to establish a claim for copyright infringement. *See Johnson*, 409 F. 3d at 18 ("copying does not invariably constitute copyright infringement") (citing *Feist*, 499 U.S. at 361).

> To show actionable copying 'involves two steps: (a) that the defendant actually copied the work as a factual matter, . . . and (b) that the defendant's copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works "substantially similar."' *Situation Mgmt. Sys., Inc. v. Asp. Consulting LLC,* 560 F.3d 53, 58 (1st Cir. 2009) (citation and quotation marks omitted). 'The plaintiff bears the burden of proof as to both elements.' *Johnson v. Gordon,* 409 F.3d 12, 17 (1st Cir. 2005).

*McGee v. Benjamin*, No. CIV.A. 08-11818-DPW, 2012 WL 959377, at *5 (D. Mass. Mar. 20, 2012) (alteration in original); *Calden v. Arnold Worldwide LLC*, No. CIV.A. 12-10874-FDS, 2012 WL 5964576, at *4 (D. Mass. Nov. 27, 2012).

## a. Actual Copying.

Actual copying may be shown via direct or circumstantial evidence. *Johnson*, 409 F.3d at 18 (citing *Segrets, Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 60 (1st Cir. 2000)).

> Plagiarists rarely work in the open and direct proof of actual copying is seldom available. To fill that void, the plaintiff may satisfy his obligation indirectly by adducing evidence that the alleged infringer enjoyed access to the copyrighted work and that a sufficient degree of similarity exists between the copyrighted work and the allegedly infringing work to give rise to an inference of actual copying.

*Id.* (citing *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir. 1995), *aff'd*, 516 U.S. 233 (1996)). Taking the facts alleged in a light most favorable to plaintiff, defendants,

through Vilma's babysitting and/or defendants' repeated visits to plaintiff's website, may well have had access to plaintiff's protected material.[11]

The next step in establishing actual copying requires plaintiff to demonstrate the existence of some probative similarity[12] between the "original, protected expressive elements" of Trust Safe's works and defendants' allegedly infringing material. *Johnson*, 409 F.3d at 19. The amended complaint alleges that defendants "copied the original expressions contained in the Art without permission and used them in their websites[,] which are distributed worldwide and displayed for the public. . . . Defendants used the original expressions contained in the Art with the pre-existing knowledge that such original expression was owned by Plaintiff." (#48 ¶¶ 42, 43.) Defendants argue that plaintiff fails to identify its website or defendants' websites, nor does it make any comparison between the allegedly protected material and defendants' infringement of that material. (#53 at 13-14.) In an effort to rebut this supposed inadequacy, plaintiff directs the court to the above-quoted paragraphs of the amended complaint as well as five paragraphs concerning plaintiff's algorithm. *See* #59 at 13 (citing (#48 ¶¶ 10-14, 41-44)). These additional paragraphs fail to bolster plaintiff's position.

As a threshold matter, it is unclear whether plaintiff's algorithm is even included in its copyright applications. In addition, the amended complaint fails to allege with any specificity how defendants copied these protected materials. Plaintiff merely asserts that defendants visited plaintiff's website repeatedly, and that "Defendants' websites would be changed in the exact

---

[11] As is established below, it is unclear exactly what material was entitled to copyright protection. Therefore, it is impossible to identify whether – and if so, when – defendants had access to the material.

[12] "This requirement of probative similarity is somewhat akin to, but different than, the requirement of substantial similarity that emerges at the second step in the progression." *Johnson*, 409 F.3d at 18.

ways Plaintiff would change its website." (#48 ¶ 36); *see also* #59 at 13 ("the [amended complaint] details the facts and circumstances of the misappropriation and that Defendants have been copying the website, verbatim, each time any alteration was made.[] This simultaneously illustrates the substantial similarity between Plaintiff's protectable works and Defendants' infringement of the works.") (internal citation omitted).[13]

Plaintiff's conclusory assertions, without identification of the specific content that was protected or any explanation as to how defendants' conduct violated plaintiff's copyright protection, frustrate any effort to compare the parties' materials. *See Iqbal*, 556 U.S. at 678; *see also McGee*, 2012 WL 959377, at *6 (addressing a plaintiff's claim for copyright infringement with respect to animated television programs, the court concluded that "the plaintiff must point to some more specific similarities than 'location, characters, content, format, and *dramatis personnae*' for his claim to survive.") (emphasis in original). As plaintiff fails to proffer any specific similarities, it thus fails to show that defendants actually copied its protected material.[14]

### b. Substantial Similarity.

> The substantial similarity requirement focuses holistically on the works in question and entails proof that the copying was so extensive that it rendered the works so similar that the later work represented a wrongful appropriation of

---

[13] While plaintiff's argument in its opposition references the amended complaint's supposed showing of "substantial similarity" – the second prong of actionable copying – rather than "probative similarity," the takeaway remains the same: plaintiff is of the opinion that the amended complaint evidences overlap between the parties' materials. Notably, the only other references to plaintiff's satisfaction of the similarity requirements of its copyright claim, as stated in Trust Safe's opposition, are two citations to the first sixty-one paragraphs of the amended complaint, accompanied by the bald statement that the amended complaint meets these requirements. *See* #59 at 14.

[14] For these same reasons, the amended complaint also fails to comply with Fed. R. Civ. P. Rule 8's requirement that the complaint include "'enough detail to provide a defendant with fair notice of what the . . . claim is and the grounds upon which it rests.'" *Silverstrand Investments. v. AMAG Pharmaceutical., Inc.*, 707 F.3d 95, 101 (1st Cir. 2013) (quoting *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (alteration in original) (citation and further internal quotation marks omitted)). It is unclear exactly what defendants are accused of copying beyond "visual art" and "various web-pages of Plaintiff's websites." (#48 ¶ 41.)

> expression. *See Yankee Candle Co. v. Bridgewater Candle Co.,* 259 F.3d 25, 33 (1st Cir. 2001); *Segrets,* 207 F.3d at 60. [. . .]
>> The 'ordinary observer' test [. . .] supplies a framework for gauging substantial similarity. Under that metric, the defendant's work will be said to be substantially similar to the copyrighted work if an ordinary person of reasonable attentiveness would, upon [viewing] both, conclude that the defendant unlawfully appropriated the plaintiff's protectable expression. *See Concrete Mach. Co. v. Classic Lawn Ornaments,* 843 F.2d 600, 607 (1st Cir. 1988); *Educ. Testing Servs. v. Katzman,* 793 F.2d 533, 541 (3d Cir. 1986). Works can be substantially similar despite the presence of disparities. The key is whether 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the works'] aesthetic appeal as the same.' *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir. 1960).

*Johnson*, 409 F.3d at 18 (some alteration in original).

The court need not, and cannot, address the question of substantial similarity in this case. *See Calden*, 2012 WL 5964576, at *5 ("A court must only address the question of substantial similarity if it identifies any probative similarity from which it can infer actual copying. Because the complaint fails to sufficiently allege actual copying and the Court is unable to identify any probative similarity, the Court need not determine whether the complaint adequately alleges substantial similarity.") (citing *McGee*, 2012 WL 959377, at *5). In like manner to its failure to satisfy the probative similarity component of actual copying, the amended complaint fails to provide enough detail with respect the works in issue to allow for any analysis of their supposed substantial similarity. As such, the amended complaint, as pled, fails to state a viable claim for copyright infringement. Plaintiff's claim for copyright infringement is dismissed without prejudice.

### B. <u>Contributory and Vicarious Infringement – Counts II and III</u>.

As explained above, Trust Safe fails to make a *prima facie* showing of direct copyright infringement by defendants: it is unclear whether plaintiff has satisfied the preregistration requirement; Trust Safe has not identified adequately the protected material or defendants'

infringement of it; and the court is unable to discern any similarity between the parties' materials. Given these deficiencies in the amended complaint, Trust Safe's claims of secondary liability crumble. *See Greenspan v. Random House, Inc.*, 859 F. Supp. 2d 206, 219 (D. Mass. 2012), *aff'd sub nom. Greenspan v. Random House, Inc.*, No. 12-1594, 2012 WL 5188792 (1st Cir. Oct. 16, 2012) ("Absent an actionable claim for direct copyright infringement, the claims for contributory or vicarious infringement must also fail.").

> One infringes contributorily by intentionally inducing or encouraging direct infringement, *see Gershwin Pub. Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (C.A. 2 1971), and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it, *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (C.A. 2 1963). Although '[t]he Copyright Act does not expressly render anyone liable for infringement committed by another,' *Sony Corp. v. Universal City Studios,* 464 U.S. [417,] 434, 104 S.Ct. 774 [(1984)], these doctrines of secondary liability emerged from common law principles and are well established in the law, *id.,* at 486, 104 S.Ct. 774 (Blackmun, J., dissenting); *Kalem Co. v. Harper Brothers,* 222 U.S. 55, 62–63, 32 S.Ct. 20, 56 L.Ed. 92 (1911); *Gershwin Pub. Corp. v. Columbia Artists Management, supra,* at 1162; 3 M. Nimmer & D. Nimmer, Copyright § 12.04[A] (2005).

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930–31 (2005) (alteration in original) (footnote omitted).

> 'As these definitions suggest, in order to hold a defendant secondarily liable someone else must have directly infringed on the copyright holder's rights.' *Wolk v. Kodak Imaging Network, Inc.,* 840 F. Supp. 2d 724, 750 (S.D.N.Y. 2012) (citing *Faulkner v. Nat'l Geographic Enters., Inc.,* 409 F.3d 26, 40 (2[d] Cir.)) ('[T]here can be no contributory infringement absent actual infringement.'), *cert. denied,* 546 U.S. 1076, 126 S.Ct. 833, 163 L.Ed.2d 707 (2005); *Matthew Bender & Co. v. West Publ'g Corp.,* 158 F.3d 693, 706 (2[d] Cir.[]1998) (rejecting plaintiff's contributory infringement claim, in part, because the plaintiff 'has failed to identify any primary infringer'), *cert. denied,* 526 U.S. 1154, 119 S.Ct. 2039, 143 L.Ed.2d 1048 (1999); *see also Elsevier Ltd. v. Chitika, Inc.,* 826 F. Supp. 2d 398, 403 (D. Mass. 2011).

*Greenspan*, 859 F. Supp. 2d at 219 (some alteration in original). Trust Safe's secondary liability claims are dismissed without prejudice.[15]

### C. Misappropriation of Trade Secrets – Counts IV and VI.

Trust Safe advances claims for the misappropriation of trade secrets under Mass. Gen. Laws ch. 93, §§ 42 and 42A as well as the common-law equivalent. *See* #48 ¶¶ 62-68, 78-85. When such claims are premised on the same factual basis, as is the case here, they may be deemed essentially equivalent. *See Incase Inc. v. Timex Corp.*, 488 F.3d 46, 59 n. 10 (1st Cir. 2007); *Burten v. Milton Bradley Co.*, 763 F.2d 461, 462 (1st Cir. 1985) ("Appellants amended complaint alleged . . . two counts of trade secret misappropriation, one based on common law tort and the other on Mass. Gen. Laws Ann. ch. 93, § 42, which essentially codifies the common law.") (footnote omitted); *Karter v. Pleasant View Gardens, Inc.*, No. CV 16-11080-RWZ, 2017 WL 1224543, at *8 n. 8 (D. Mass. Mar. 31, 2017).

> Under Massachusetts General Laws,
>
> [w]hoever embezzles, steals or unlawfully takes, carries away, conceals, or copies, or by fraud or by deception obtains, from any person or corporation, with intent to convert to his own use, any trade secret, regardless of value, shall be liable in tort to such person or corporation for all damages resulting therefrom.

Mass. Gen. Laws ch. 93, § 42.

> To prevail on a claim of misappropriation of trade secrets, a plaintiff must show: 1) the information is a trade secret; 2) the plaintiff took reasonable steps to preserve the secrecy of the information; and 3) the defendant used improper means, in breach of a confidential relationship, to acquire and use the trade secret.

---

[15] While the court need not address the substance of Trust Safe's secondary liability claims at this stage, it notes that the amended complaint fails to delineate clearly the bases for these claims. The confusion arises as a result of the amended complaint's liberal use of the term "defendants." *See, e.g.*, #48 ¶¶ 51-52 ("Defendants, and each of them, had reason to know that the Defendants were infringing Plaintiff's original expression by way of Vilma's [sic] and Kostas'[s] position[s] of control in [Dynamic]. Defendants materially contributed induced [sic] the infringing activity by supplying the resources for the infringement and by directing the infringing activities of Defendants."); *see also id.* ¶¶ 57-58.

*Incase Inc.*, 488 F.3d at 52; *Karter*, 2017 WL 1224543, at *8. Defendants contend that plaintiff fails to establish the existence of a trade secret, and the court agrees.

"A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*, 357 Mass. 728, 736 (1970) (citing Restatement of Torts, § 757, comment b); *see also* Mass. Gen. Laws ch. 266, § 30(4) ("The term 'trade secret' . . . means and includes anything tangible or intangible or electronically kept or stored, which constitutes, represents, evidences or records a secret scientific, technical, merchandising, production or management information, design, process, procedure, formula, invention or improvement."). "It is hornbook law that the parties and the court cannot accurately decide the question of whether a trade secret exists without first understanding what precisely is asserted as a secret. . . . Analysis becomes difficult, however, when a plaintiff is unable or simply refuses to identify its alleged trade secret adequately." *Sutra, Inc. v. Iceland Exp., ehf*, No. CIV.A. 04-11360-DPW, 2008 WL 2705580, at *3 (D. Mass. July 10, 2008) (internal citation and quotation marks omitted).

> The burden is on the party claiming trade secret status to identify the specific trade secrets at issue 'with clarity that can be understood by a lay person and distinguish what is protectable from that which is not.' *Sutra, Inc. v. Iceland Express, EHF*, No. 04-11360-DPW, 2008 WL 2705580, at *4 (D. Mass. July 10, 2008) (quotations, citation and punctuation omitted). 'In determining what is an adequate description of a trade secret, courts have required specificity, although that specificity is highly fact dependent.' *Id.*, and cases cited.

*EMC Corp. v. Pure Storage, Inc.*, No. CV 13-12789-JGD, 2016 WL 7826662, at *5 (D. Mass. Aug. 19, 2016).

The crux of both of Trust Safe's misappropriation claims is that defendants wrongfully took and used its algorithm.[16] *See* #48 ¶¶ 62-68, 78-85.

As stated in the amended complaint,

> [Evelina and Darius] created [the] algorithm, using multiple, supporting websites, website layout structure, element placement, color scheme, specific topic themes, tone of language, and specific words and word combinations on Bing Ads, Google Adwords, and Facebook platforms, that would maximize revenues and reduce advertising costs while maintaining same high standards for the internet arm of her [sic] business. Evelina and Darius tested many variables and engaged in substantial research to modify and hone the algorithm.

(#48 ¶ 12.)[17] The amended complaint goes on to assert that the algorithm had a positive effect on Trust Safe and was therefore valuable. *Id.* ¶¶ 13, 14. These descriptions do not "distinguish what is protectable from that which is not." *Sutra, Inc.*, 2008 WL 2705580, at *4. There is no satisfactory explanation as to what the algorithm is or what it does, save for its alleged cost-saving benefits and a resulting increase in plaintiff's sales. The remainder of the amended complaint does little to illuminate the discussion. Instead, Trust Safe merely asserts that defendants acquired and used the algorithm, *see* #48 ¶¶ 21-27, 65, 66, 81, 82, and that it "is a secret and confidential electronically stored process, formula, design, technical information, scientific information, proprietary information not known to other businesses in the Plaintiff's industry that provides Plaintiff with a competitive advantage over others who do not know the

---

[16] While the amended complaint asserts that defendant Vilma was afforded access to "revenues generated, the costs of the business, the number of customers Plaintiff had and was acquiring daily, the location of Plaintiff's biggest customer base, and the profit margin realized by Plaintiff," (#48 ¶ 20), the amended complaint does not allege this information is the basis for either of plaintiff's misappropriation claims. Rather, both claims are specifically confined to the algorithm.

[17] Trust Safe, in its opposition, posits that this paragraph evidences that the algorithm "is a formula of words, combinations o[f] words, placement of words and protocols when driving end users to a content driven website in the weight loss industry." (#59 at 17.) This definition does little to elucidate matters. The court is still left to guess to what extent, if any, the algorithm is protected and how defendants were supposedly using it.

algorithm." (#48 ¶ 63); *see also id.* ¶ 79 (same). While the amended complaint asserts that defendants were "bidding on the same keywords Plaintiff used in its algorithms," *id.* ¶ 32, it does not make clear whether these words themselves are a product of the algorithm and thus confidential; if the parties' bidding on the same words demonstrates defendants' possession and use of the algorithm; or if these words are not common to the diet industry. *See J.T. Healy & Son, Inc.*, 357 Mass. at 736 ("Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret.") (quoting Restatement of Torts § 757 comment b) (internal quotation mark omitted); *contra Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 381, 394 (D. Mass. 2012) (finding the plaintiff's explanation of his "market test" marketing plan sufficient to satisfy the trade secret element and defendants' alleged actions in accordance with the plan enough to make out a claim for misappropriation of the trade secret). In short, the court is unable to identify what is protected.

Trust Safe's misappropriation claims fail for want of adequate identification of the trade secret in issue. *See Sutra, Inc.*, 2008 WL 2705580, at *4 ("A plaintiff has no cognizable trade secret claim until it has adequately identified the specific trade secrets that are at issue.") (citing *Cambridge Internet Solutions v. Avicon Group*, No. 99-1841, 1999 WL 959673, at *2 (Mass. Super. Sept. 21, 1999) (internal quotation marks omitted)). Given that plaintiff may well have a valid claim, and the basis for dismissal is a lack of detail in the allegations, Trust Safe's misappropriation of trade secrets claims, Counts IV and VI, are dismissed without prejudice.

### D. Intentional Fraud – Count V.

To make out a viable claim for fraud, plaintiff "must establish that the defendants [1] made a false representation of material fact, [2] with knowledge of its falsity, [3] for the purpose of inducing the plaintiffs to act on this representation, [4] that the plaintiffs reasonably relied on

16

the representation as true, and [5] that they acted upon it to their damage." *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 471 (2009) (citing *Masingill v. EMC Corp.*, 449 Mass. 532, 540, 870 N.E.2d 81 (2007)). Rule 9(b), Fed. R. Civ. P., mandates that a heightened pleading standard be applied to fraud claims, including state law fraud claims asserted in federal court. *See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009). "The heightened requirement serves '(1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a "strike suit"; and (3) to safeguard defendants from frivolous charges which might damage their reputations.'" *Enercon v. Glob. Computer Supplies, Inc.*, 675 F. Supp. 2d 188, 191 (D. Me. 2009) (quoting *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir. 1987)).

The fraudulent representations as alleged in the amended complaint are twofold: 1) Vilma's offer to babysit Evelina and Darius's children; and 2) Kostas's[18] seeking advice from Darius regarding Kostas's starting an electronic cigarette business. *See* #48 ¶ 70; *see also id.* ¶ 28. The harm that resulted from defendants' representations was "lost revenues because the fraud allowed Defendants to misappropriate Plaintiff's trade secrets and confidential information and become direct competitors in the same, small niche market within the same particular advertising platform." (#48 ¶ 75.) Because the amended complaint fails to identify sufficiently the trade secrets and the confidential information that defendants fraudulently obtained, and fails to explain with specificity how defendants used these secrets and information to the detriment of

---

[18] Under the intentional fraud claim section of the amended complaint, plaintiff asserts that "Defendants . . . approached Darius over the phone between April 2012 to [sic] January 2013 and represented [that] Defendants were starting an electronic cigarette internet based business." (#48 ¶ 70.) However, in the fact section of the amended complaint, Trust Safe alleges that it was Kostas alone who called Darius about the electronic cigarette business. *See id.* ¶ 28.

Trust Safe, plaintiff's claim for fraud does not meet the pleading requirements.[19] Trust Safe's fraud claim may well, with additional detail, withstand scrutiny. Thus, plaintiff's intentional fraud claim, Count V, is dismissed without prejudice.

### E. Violation of Mass. Gen. Laws ch. 93A, § 11 – Count VII.

"A party will be liable under Chapter 93A if it engages in an 'unfair method of competition' or an 'unfair or deceptive act or practice.'" *Incase Inc.*, 488 F.3d at 56 (quoting Mass. Gen. Laws ch. 93A, § 11). Understanding that Trust Safe's 93A claim is tethered to defendants' actions as limned in the preceding six claims, and that those claims are dismissed without prejudice for want of detail, the court is unable to address the merits of plaintiff's 93A claim. Trust Safe's 93A claim, Count VII, is dismissed without prejudice.

### V. Conclusion.

For all of the reasons stated, Defendants' Motion to Dismiss for Failure to State a Claim (#52) is ALLOWED without prejudice to Trust Safe's filing of a second amended complaint.[20] Plaintiff shall file its second amended complaint within 21 days of this Order.[21]

/s / M. Page Kelley
M. Page Kelley
September 8, 2017    United States Magistrate Judge

---

[19] While the amended complaint identifies confidential information to which Vilma was afforded access when she volunteered to assist with the packaging and shipping portion of the business, *see* #48 ¶ 20, this occurred prior to any allegedly fraudulent misrepresentation and is not connected to the fraud claim as advanced in the amended complaint.

[20] Any amendment shall be limited to the extent necessary to comply with the deficiencies as identified in this Order. No further amendment is allowed.

[21] Plaintiff's request for attorney's fees in relation to its response to the motion to dismiss is DENIED.