UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TRUST SAFE PAY, LLC,
    Plaintiff,

v.                            CIVIL ACTION NO. 17-10166-MPK[1]

DYNAMIC DIET, LLC, KOSTAS
VADOKLIS, and VILMA VADOKLIS,
    Defendants.

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED (CORRECTED) COMPLAINT (#78).

KELLEY, U.S.M.J.

I. Introduction.

Defendants have moved to dismiss plaintiff's claims in the Second Amended (Corrected) Complaint (SACC) (#72),[2] the fourth complaint plaintiff has filed since the initiation of this action in California in 2016. In its opinion granting defendants' previous motion to dismiss, this court outlined various deficiencies in plaintiff's pleading and gave plaintiff the opportunity to re-

---

[1] On March 21, 2017, with the parties' consent, this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). (#42.)

[2] Plaintiff filed a Second Amended Complaint on October 6, 2017 (#71), the deadline set by the court (#70). Four days later, Plaintiff filed a "corrected" version, the SACC. (#72.) The bodies and attachments of the two versions appear to be different. Although plaintiff, oddly, continues to cite #71 for certain propositions (*see*, *e.g.*, #83 at 13), the court considers the SACC (#72) the operative complaint.

plead, with certain limitations. (#64 at 18 n.20 ("Any amendment shall be limited to the extent necessary to comply with the deficiencies as identified in this Order. No further amendment is allowed.").) Plaintiff has re-pled its case, but has not remedied the deficiencies.[3] Critically, plaintiff has failed to state a claim for direct or indirect violation of copyright, the only federal claims present. The court, therefore, GRANTS defendants' motion to dismiss. The court DISMISSES the copyright claims, (#72, Counts I-III), with prejudice, and the remaining state law claims, (#72, Counts IV-VI), without prejudice.

## II. The Facts.

The factual background is set forth in the court's prior opinion. *See*, #64 at 2-5. This litigation "stems from a friendship gone awry between plaintiff's principal, Evelina Juchneviciute, her partner and co-member of Trust Safe, Darius Kersulis, and the individual defendants. The problems allegedly resulted in the individual defendants surreptitiously stealing proprietary information relating to [diet product business] Trust Safe, which information was then used to open and operate a competing company," Dynamic Diet LLC (DDL). *Id.* at 2. The claimed stolen information included an algorithm[4] that allowed plaintiff to increase the efficiency of its advertising by using identified search words, a "Keyword List," to only advertise to individuals who were likely to purchase plaintiff's products. (#72 ¶¶ 15-25.)

Of particular relevance to the jurisdictional determination here, plaintiff is "a Massachusetts limited liability company with its principal place of business in Idaho." *Id.* ¶ 1.

---

[3] The court has concluded that oral argument is not necessary to resolve this motion. Nothing plaintiff could argue in a proposed sur-reply would change the result in this matter. *See* #93.

[4] The details of the algorithm are explained more specifically in the SACC than in the prior complaint. However, where plaintiff does not claim that the algorithm itself was copyrighted, the algorithm is not relevant to the court's analysis. The alleged theft of the algorithm forms the basis of the allegation of, among other claims, misappropriation of trade secrets, which will be for the Massachusetts state court to evaluate.

2

"Plaintiff is informed and believes, and thereon alleges that Kostas and Vilma are individuals residing in Nantucket, Massachusetts." *Id.* ¶ 2 "DDL is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, having a principal place of business at 7 West Creek Road, Nantucket, Massachusetts." *Id.* ¶ 3.

According to plaintiff's SACC, DDL "owns the website DynamicDiet.com/ (the 'Site') through which DDL sells and promotes products that directly competes [sic] with Plaintiff's product." *Id.* ¶ 52. DDL also owns a second "website DietInsight.org that purports to review and compare competing diet supplements in order to assist consumers with deciding which diet supplements to purchase. [. . .]" *Id.* ¶ 53. "Darius is the owner and operator of the diet review website ConsumersCompare.org, which contains text that is subject to a copyright application submitted to the U.S. Copyright Office (the "CC Work")." *Id.* ¶ 55. Darius assigned ownership in the CC work to plaintiff. *Id.* ¶ 56. "Evelina is the author and claimant of text contained on Plaintiff's website [sic] PureSlim1000.com and PS1000.com, which is the subject of a copyright application filed with the U.S. Copyright Office (the "PS Work")." *Id.* ¶ 57. Evelina assigned ownership in the PS Work to plaintiff. *Id.* ¶ 58. "In or around December of 2016, Plaintiff filed applications for registration for the PS Work and the CC Work (collectively "Plaintiff's Works"). *See* Copyright Office Emails, attached as **Exhibit A** hereto." *Id.* ¶ 59 (emphasis in original).

Plaintiff alleges further that, "[u]pon information and belief, in early 2015, for a commercial purpose, DDL knowingly, wrongfully and without permission copied and used a portion of the CC Work as demonstrated by **Exhibit B** attached hereto (*comparing* Plaintiff's [website copies] pages 1-2 *with* DDL's [website copies] pages 3-4)." *Id.* ¶ 60 (emphasis in original). Plaintiff includes additional exhibits as well, purporting to compare portions of plaintiff's and DDL's websites to demonstrate alleged copying of CC and PS Work. *Id.*¶¶ 61-68,

Exs. C-J. "Without authorization, the DDL used, republished, distributed and displayed to the public worldwide Plaintiff's Works on DDL's Websites. DDL used Plaintiff's Works with the pre-existing knowledge that such original expression was owned by Plaintiff." *Id.* ¶¶ 69- 70. Based on these allegations, plaintiff claims defendant DDL violated plaintiff's copyright, and the individual defendants engaged in contributory and vicarious infringement. *Id.* Counts I-III.

Defendants' motion to dismiss the SACC for failure to state a claim is presently before the court. (##78, 79.) Plaintiff opposed the motion (#83) and objected to it (#85), and defendants replied (#90).[5]

### III. Standard of Review.

The appropriate standard of review was stated in the court's prior opinion:

> A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must "'accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor.'" *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley*, 657 F.3d at 46 (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).
>
> In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." *Id.* at 555, 570.

---

[5] Plaintiff also filed a Request for Judicial Notice (#84), to which defendants objected (#89). The court has reviewed the voluminous filings and exhibits and does not require oral argument on any motion.

> "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

(#64 at 5-6.)

IV. Discussion.[6]

A. Copyright Infringement – Count I.

"To establish copyright infringement under the Copyright Act, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work

---

[6] Plaintiff continues to levy allegations against "Defendants," when sometimes apparently meaning individual defendants. *See*, *e.g.*, #72 ¶ 46 ("In January 2015, Defendants organized DDL [. . . .]").

Plaintiff also continues to fail to acknowledge the implications of the fact that Dynamic Diet is an LLC, despite the court's prior instruction. *See* #64 at 6 n.8 ("Should Trust Safe choose to file a repleader, the issues concerning Dynamic's LLC status and the lack of specificity in the amended complaint's allegations must be addressed. Trust Safe's bald assertion that "Defendants . . . conspired and . . . act[ed] pursuant to said conspiracy" (#48 ¶ 6), does not ameliorate these problems."). Rather, plaintiff again attempts to avoid distinguishing among defendants:

> Upon information and belief, each Defendant was the agent, servant, representative and/or employee of each of the other Defendants, and that in doing the things hereinafter alleged, each Defendant was acting within the course and scope of the Defendant's authority, with the permission, knowledge, consent and ratification of each of the other Defendants.
>
> Upon information and belief Defendants, and each of them, conspired and agreed among themselves to the acts complained of herein and were, in doing the acts complained of herein, acting pursuant to said conspiracy, and that each of the Defendants sued herein is jointly and severally responsible and liable to Plaintiff for the damages alleged herein.

*Id.* ¶¶ 8-9. Given this court's decision on plaintiff's copyright claims, the court need not address whether the allegations against each defendant are sufficient, or evaluate the allegations of conspiracy.

5

that are original.'" *Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Plaintiff has not pled sufficiently either element.

1. Ownership of a Valid Copyright.

Subsection (A) of 17 U.S.C. § 411 states that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." Plaintiff does not claim to own any registered copyright. *See* #83 at 13-14 ("Plaintiff has three (3) copyright applications currently before the Copyright Office."). The question is, then, whether plaintiff has sufficiently pled preregistration. Regarding this issue, the court previously stated:

> The amended complaint asserts that "Plaintiff is the assignee of three (3) applications for copyright registrations in works of visual art, which include[] various web-pages of Plaintiff's websites, application numbers 1-3998164856; 1-3998164250; 1-4018230311 . . . ." (#48 ¶ 41.) Trust Safe takes the position that this allegation is sufficient to pass muster under § 411. *See* #59 at 10. While the court need not decide the issue at this juncture – plaintiff's claim fails on other grounds, *see infra* Section 2 – it notes that **a plaintiff relying on the "application approach"[7] must demonstrate that it "sent the requisite application (together with deposit and fee) to the Copyright Office."** *Alicea v. Machete Music*, 744 F.3d 773, 779 (1st Cir. 2014) (internal citation omitted); *see also Concordia Partners, LLC v. Pick*, No. 2:13-CV-415-GZS, 2013 WL 6817627, at *2 (D. Me. Dec. 23, 2013) ("As Defendants acknowledge, Plaintiff has alleged that they have applied for copyright registration and satisfied all of the necessary formalities to obtain the registration certificates."). Contrary to Trust Safe's assertion that such information is "readily verifi[able] . . . through the Copyright Office website[,]" (#59 at 10), **should plaintiff choose to replead its copyright infringement claim, such a showing must be made in the repleader or via documents attached to it.**

---

[7] The application approach to § 411 deems the registration requirement satisfied "at the time the copyright holder's application is received by the Copyright Office." *Alicea v. Machete Music*, 744 F.3d 773, 779 (1st Cir. 2014) (declining to decide "whether the application approach or the registration approach should govern, as we conclude that the defendants were entitled to summary judgment under either approach").

6

(#64 at 7-8 (emphasis added).)

Despite the court's instruction that plaintiff show it complied with all the application requirements, plaintiff fails to plead that it submitted a *complete* application, paid the requisite fee, and deposited the allegedly-protected materials,[8] much less that it had done so prior to initiating this litigation; nor does plaintiff provide documents sufficient to satisfy the preregistration requirement. An incomplete application does not satisfy the preregistration requirement for a copyright action. The First Circuit has made this clear. *Alicea*, 744 F.3d at 780 (affirming grant of summary judgment for defendants where "[m]ore than two years after filing suit, the plaintiffs still had not established that their applications to the Copyright Office were complete"). The *Alicea* court made note of the fact that email correspondence indicated that the Copyright Office was still attempting to determine whether the deposited materials were sufficient in September 22, 2011, and "[o]ver four months later, at a hearing before the district court on the defendants' summary judgment motion, no progress appeared to have been made [. . . .]" *Id.* at 779.

The *Alicea* court cited *Geoscan, Inc. of Texas v. Geotrace Techs., Inc.*, 226 F.3d 387, 393 (5th Cir. 2000). In *Geoscan*, the court affirmed the district court's grant of summary judgment to defendant on plaintiff's copyright claims where:

> [W]e hold that at the time of the filing of this suit in July 1998, although Scan had filed an application, paid a fee, and made a deposit with the Copyright Office, the deposit was not a complete copy of the original source code, thus Scan had not fulfilled all the statutory formalities necessary to register its copyright and have "ownership" in its software for the purposes of a copyright infringement claim.

---

[8] Plaintiff's "Request for Judicial Notice," (#74), claims that "[t]he fees were paid and **deposits of the artworks** were provided to the Copyright Office[.]" *Id.* at 2. This conclusory statement is not supported by any documentation or copy of alleged deposited artworks. It is further belied by the attachments to the SACC, which demonstrate that the deposit of materials was not complete as of September 2016.

*Id.* Other courts are in agreement that only a complete application satisfies the registration requirement. *See*, *e.g.*, *Sungard Data Sys., Inc. v. Edward S. Devlin*, No. 95-3109, 1995 WL 447644, at *4 (E.D. Pa. July 28, 1995) ("Here, SunGard provided the court with a copyright application purportedly registered with the Copyright Office. [. . .] However, there is nothing on the application proving that the Copyright Office received the application, that the required number of copies of the work were filed, or that the fee was filed in proper form. [. . .]"); *cf. Gable-Leigh, Inc. v. N. Am. Miss*, No. CV 01-01019 MMM(SHX), 2001 WL 521695, at *4 (C.D. Cal. Apr. 13, 2001) (finding preregistration requirement met where plaintiff "provided copies of the materials deposited, the overnight mail receipt, and the check for the registration fee endorsed by the Register of Copyrights" and "the Copyright Office received her copyright registration" before the lawsuit commenced).

Plaintiff does claim that "[i]n or around December of 2016, Plaintiff filed applications for registration for the PS Work and the CC Work (collectively "Plaintiff's Works")." (#72 ¶ 59.) This would arguably be too late to form the basis of copyright claims in this case. Plaintiff filed suit on October 24, 2016 (#1.) Under 17 U.S.C. § 411 (A), "no civil action for infringement of the copyright in any United States work **shall be instituted until** preregistration or registration of the copyright claim has been made in accordance with this title" (emphasis added).

In the opposition to defendants' motion to dismiss, plaintiff claims "the dates referenced in the SAC[9] regarding the date of the copyrights [sic] applications was made in error; the dates of the applications were prior to this litigation as they were done in September." (#83 at 13.) Concurrent with its opposition, plaintiff filed a "Request for Judicial Notice of confirmations of

---

[9] In its briefing, plaintiff refers to the Second Amended Complaint without clarifying whether the reference is to the corrected version. The court will assume that it is.

the filing of copyright applications." (#84.) This Request proves too little too late, coming well after the deadline for amending the complaint and consisting of evidence insufficient to bolster the SACC.

The Request attaches what purports to be "copyright application confirmations" dated September 2016; the same documents are attached as exhibits to Evelina's affidavit in support of plaintiff's opposition (#83-1).[10] The source of these "confirmations" is unclear. It is not apparent whether they are copies of mailed materials, printouts from a public or private website, or something else. As defendants point out, the copies are not certified. (#89 at 3.) These "confirmations" do not establish that any fees were paid, or which materials were submitted for copyright protection.[11] They contain no attachments. The "confirmations" are silent as to the content of the deposited material and, therefore, as to the completeness of the applications. Furthermore, as discussed below, plaintiff's other documents establish that, even if applications were submitted in September 2016, they were incomplete.

Exhibit A to the SACC consists of emails between Evelina and the United States Copyright Office, dated between December 5, 2016 and May 31, 2017. (#72-1.)[12] The emails discuss what kind of content is copyrightable, and Evelina's submission of materials. *Id.* It is

---

[10] Evelina's affidavit states that the copyright applications "have been assigned to Trust Safe Play [sic], LLC" (#83-1 at 1), but does not attach copies of any assignment or give any details as to the date or form of such assignment. The Request states that the "applications are dated September 2015," #84 at 2, but this is apparently a typo as the documents attached are plainly dated September 2016.

[11] The Request asks the court to take notice that "[t]he fees were paid and deposits of the artworks were provided to the Copyright Office" but does not give any support for these contentions other than the "receipts."

[12] The December 5, 2016 email is from the Copyright Office to Evelina, and appears to be replying to a message from Evelina, which is not included in the Exhibit. *Id.* at 8.

9

clear that, as of December 2016, Evelina had not submitted a complete copy of the website materials she intended to copyright to the Copyright Office. *Id.* at 8, email from Evelina to Copyright Office (Dec. 5, 2016) ("I will work on all this and submit it **as soon as I have it put together**.") (emphasis added); *id.* at 7, email from Evelina to Copyright Office (Dec. 8, 2016) ("I am trying to get everything organized and looking through deposited materials that I submitted to Legal Zoom I want to make sure everything else was received. It was a lot of back and forth depositing, them rejecting some materials and at the end they do not let you know what exactly they are depositing."); *id.* at 7, email from Copyright Office to Evelina (Dec. 9, 2016) ("So I should wait until I hear back from you about the correct copy?"); *id.* at 6, email from Evelina to Copyright Office (Dec. 30, 2016) ("[T]hank you for your patience, here is a link to upload the **missing content** for the Pureslim1000 site for copyright registration.") (emphasis added). At least as of March 2017, the Copyright Office was still attempting to confirm the content of Evelina's submission. *See id*. at 2, email from Copyright Office to Evelina (Mar. 24, 2017) ("To sum up, we will register the following[. . . .] Do you agree to all of that?").

An incomplete application is insufficient. As the court stated in *Lafarga v. Magazine*,

> A complete copyright application consists of three components: a deposit (i.e., a copy of the copyrightable work), an application, and a fee. [. . .] Here, Mr. Lafarga pleads that he mailed one check along with the application. [. . .] He makes no mention, however, of depositing the copyrighted work, which is required by the statute. [. . .] [T]he Court finds that Mr. Lafarga did not plead either a completed application or receipt of that application, and thereby did not plead copyright ownership.

*No. SACV111501DOCMLGX*, 2014 WL 12573551, at *3-4 (C.D. Cal. July 18, 2014) (internal citations omitted). The same is true here. Plaintiff's own documentary evidence makes clear that any application received by the Copyright Office prior to the filing of this litigation, if such application was received, was incomplete. Plaintiff has not shown that a complete copyright

10

application has *ever* been received by the Copyright Office. Plaintiff does not satisfy the preregistration or registration requirements, and therefore fails to state a claim for copyright infringement. *See Alicea*, 744 F.3d at 779.

2. Copying of Constituent Elements.

The mere allegation that a defendant copied the work of a plaintiff is insufficient, on its own, to establish a claim for copyright infringement. *See Johnson*, 409 F. 3d at 18 ("copying does not invariably constitute copyright infringement") (citing *Feist*, 499 U.S. at 361).

> To show actionable copying "involves two steps: (a) that the defendant actually copied the work as a factual matter, . . . and (b) that the defendant's copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works 'substantially similar.'" *Situation Mgmt. Sys., Inc. v. Asp. Consulting LLC,* 560 F.3d 53, 58 (1st Cir. 2009) (citation and quotation marks omitted). "The plaintiff bears the burden of proof as to both elements." *Johnson v. Gordon,* 409 F.3d 12, 17 (1st Cir. 2005).

*McGee v. Benjamin*, No. CIV.A. 08-11818-DPW, 2012 WL 959377, at *5 (D. Mass. Mar. 20, 2012) (alteration in original); *Calden v. Arnold Worldwide LLC*, No. CIV.A. 12-10874-FDS, 2012 WL 5964576, at *4 (D. Mass. Nov. 27, 2012).

The court cannot analyze plaintiff's contention of actual copying because it unclear which, if any, portions of plaintiff's websites were or are subject to copyright protection. Therefore, while plaintiff, via extensive (sometimes challenging to decipher) attachments to the SACC, attempts to show defendants' copied portions of plaintiff's websites, plaintiff has not established that these portions are protected. Moreover, it is unclear, from plaintiff's exhibits, whether the items highlighted make the websites "substantially similar." *Johnson*, 409 F.3d at 18 ("The substantial similarity requirement focuses holistically on the works in question and entails proof that the copying was so extensive that it rendered the works so similar that the later work represented a wrongful appropriation of expression.") (citations omitted).

B. <u>Contributory and Vicarious Infringement – Counts II and III</u>.

As explained above, Trust Safe fails to make a *prima facie* showing of direct copyright infringement by defendants: it is unclear whether plaintiff has satisfied the preregistration requirement; Trust Safe has not identified adequately the protected material or defendants' infringement of it; and the court is unable to determine whether there is substantial similarity between the parties' materials. Given these deficiencies in the SACC, Trust Safe's claims of secondary liability crumble. *See Greenspan v. Random House, Inc.*, 859 F. Supp. 2d 206, 219 (D. Mass. 2012), *aff'd sub nom. Greenspan v. Random House, Inc.*, No. 12-1594, 2012 WL 5188792 (1st Cir. Oct. 16, 2012) ("Absent an actionable claim for direct copyright infringement, the claims for contributory or vicarious infringement must also fail.") (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930–31 (2005)).

C. <u>Remaining Claims are State Law Claims</u>.

Plaintiff argues that the court has jurisdiction over the claims under federal law, which would be federal copyright law, and supplemental jurisdiction over the state law claims. (#72 ¶ 4 (citing "28 U.S.C. §§ 1331 and 1367").) Having dismissed the copyright claims in the case, the court must reassess its jurisdiction.[13] The First Circuit has recently addressed the court's authority to exercise supplemental jurisdiction over remaining state law claims when all federal claims have been dismissed:

> [T]he Supreme Court has instructed that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining

---

[13] There is no basis for diversity jurisdiction here. *See* 28 U.S.C. § 1332. Both plaintiff and defendants are Massachusetts citizens; plaintiff is incorporated in Massachusetts, the individual defendants reside in Massachusetts, and defendant Dynamic Diet is a Massachusetts LLC. *See* #72 ¶¶ 1-3.

state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L.Ed.2d 720 (1988); *see also* 28 U.S.C. § 1367(c)(3).

> In accord with that guidance, moreover, we have held that, when all federal claims have been dismissed, it is an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state law claims unless doing so would serve "the interests of fairness, judicial economy, convenience, and comity." *See Desjardins v. Willard*, 777 F.3d 43, 45-46 (1st Cir. 2015) (citation omitted); *Rivera-Díaz v. Humana Ins. of Puerto Rico, Inc.*, 748 F.3d 387, 392 (1st Cir. 2014). We have also held that, under this standard, it can be an abuse of discretion—if no federal claim remains—for a district court to retain jurisdiction over a pendent state law claim when that state law claim presents a substantial question of state law that is better addressed by the state courts. *Desjardins*, 777 F.3d at 45-46.

*Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017). *See also*, *Miller v. Town of Wenham Massachusetts*, 833 F.3d 46, 56 (1st Cir. 2016); *Desjardins v. Willard*, 777 F.3d 43, 45–46 (1st Cir. 2015) (vacating dismissal of state claims and remanding them to state court where "the federal claims that formed the basis for removal here have been dismissed 'well before trial,' and the remaining state law claims . . . "raise substantial questions of state law that are best resolved in state court'") (citation omitted).

Despite lengthy motion practice, this case is in its procedural infancy. Discovery has not commenced; it is "well before trial." Moreover, plaintiff's claims depend on an interpretation of state law as to misappropriation of trade secrets, fraud, and unfair and deceptive business practices under Massachusetts General Laws chapter 93A. This interpretation is appropriately left to the state court. Therefore, the court declines to exercise jurisdiction over plaintiff's state law claims, Counts IV-VI of the SACC, and DISMISSES the claims without prejudice.

## V. Conclusion.

For all of the reasons stated, Defendants' Motion to Dismiss for Failure to State a Claim (#52) is ALLOWED as to Plaintiff's Copyright Claims, (#72, Counts I-III), which are DISMISSED with prejudice.[14] Plaintiff's remaining claims, (#72, Counts IV-VI), are hereby DISMISSED without prejudice. Defendants' request for attorney fees (#79 at 28-29) is DENIED. Plaintiff's request for attorney's fees in its opposition to the motion to dismiss (#83 at 25-26) is also DENIED. The documents attached to Plaintiff's Request for Judicial Notice (#84) have been considered as discussed above. Otherwise, the Request is DENIED.

July 27, 2018 /s / M. Page Kelley
M. Page Kelley
United States Magistrate Judge

---

[14] The court's prior order stated that "amendment shall be limited to the extent necessary to comply with the deficiencies as identified in this Order. No further amendment is allowed." (#64 at 18 n.20.)